THERESA A. SETTLE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Settle v. Commissioner
Docket No. 16502-85.
United States Tax Court
T.C. Memo 1989-185; 1989 Tax Ct. Memo LEXIS 188; 57 T.C.M. (CCH) 227; T.C.M. (RIA) 89185; April 25, 1989. Lawrence A. Merryman, for the petitioner. Karen Quesnel, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: Additions to Tax
Year
Deficiency
Section 6653(a)(1)
Section 6653(a)(2)
1981
$ 3,999
$ 199.95
*
The issues are whether petitioner received unreported tip income for 1981, and whether petitioner is subject to the additions to tax as determined by respondent. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated by reference. Petitioner, Theresa A. Settle, resided *189 in Las Vegas,Nevada, at the time she filed her petition herein. During 1981, petitioner was employed as a twenty-one dealer at the Castaway Casino Hotel (hereinafter Castaway's). Twenty-one dealers at Castaways normally worked eight hour shifts in 1981. Petitioner's shift was 3:00 a.m. to 11:00 a.m., a time when there were fewer customers at Castaways than during the day and evening shifts. Petitioner's employment with Castaways began sometime in 1980. Towards the end of 1980, she took a leave of absence from her employment as a result of injuries she suffered in a fire in an apartment building. Petitioner was forced to jump out of a window to escape the fire. In the fall, petitioner injured her back, legs and groin and broke some ribs. Consequently, she was out of work for two and one-half months in 1980. When petitioner returned to work at Castaways at the beginning of 1981, petitioner was assigned to work at a twenty-one table and was paid the minimum wage by Castaways. In addition to her wages, at the end of each shift, petitioner received a share of the tips ("tokes") paid by customers at the twenty-one table she worked. Petitioner did not receive an equal share *190 of tokes due to her limited capacity to stand for long periods of time because of the physical injuries she suffered as a result of the fire. Twenty-one dealers must be on their feet for long periods of time during a shift. Under the terms of her employment, petitioner was permitted by Castaways to take frequent breaks from her twenty-one table during her shift, but make herself available as need arose. In consideration of the fact that petitioner's participation as a dealer did not rise to the level of her co-dealers at the twenty-one tables, she agreed to be, and was given, a much smaller share of the nightly toke income. The share petitioner did receive was based on her co-dealers' evaluation at the end of each shift of petitioner's participation as a twenty-one dealer. When petitioner came home after each shift, she would record her toke income on a personal 1981 calendar. For her 1981 taxable year, petitioner worked as a twenty-one dealer at Castaways for 1901.5 hours and reported $ 1,920 in tip income in addition to her minimum wage income. In 1982, respondent, as part of a compliance program with dealers at casinos in Las Vegas, Nevada, sent dealers, including petitioner, *191 monthly calendars in which they were to record their toke income on a daily basis. Such completed monthly calendars were supposed to be returned on a regular basis to respondent. Throughout 1982, petitioner returned to respondent the completed monthly calendars with her toke income noted for each day she worked. On April 13, 1982, petitioner received the following letter from the Internal Revenue Service: Teresa Settle 4336 Pine Grove St. Las Vegas, NV 89117 Dear Taxpayer: In consideration of 100 percent compliance with the employee "toke" reporting requirements of the Internal Revenue Code, the Internal Revenue Service agrees to refrain from initiating any form of examination activity for toke income against you for all open years prior to January 1, 1982, the effective date of this agreement. The term "all open years" includes all individual income tax returns upon which the statute of limitations has not yet expired. This "open year" period includes the period January 1, 1981, through December 31, 1981. In consideration of the Internal Revenue Service not initiating any form of examination activity for toke income, you agree to comply fully with the toke reporting *192 requirements of the Internal Revenue Code. The reporting of your toke income through an approved system indicates your acceptance of this agreement. Sincerely, /s/ PAUL R. DICKEY Acting, District Director In reliance on this letter and her continued compliance throughout the rest of 1982 with the toke reporting program initiated by respondent, petitioner disposed of her personal 1981 calendar at some point prior to trial herein. This calendar was the only record petitioner maintained in 1981 to record her 1981 toke income. In his notice of deficiency, respondent determined that Castaways' twenty-one dealers averaged approximately $ 8.50 per hour in toke income. This hourly rate was multiplied by the 1901.5 hours petitioner worked in 1981. From the total toke income thus computed, respondent subtracted the $ 1,920 in toke income petitioner reported on her tax return to arrive at the unreported toke income of $ 14,242.75 for 1981. OPINION The issue is whether petitioner received unreported toke income for 1981 and is subject to the additions to tax as determined by respondent. Petitioner has the burden of proving that respondent's determination in his notice of *193 deficiency is incorrect. Rule 142(a). In accordance with Rule 91, the parties entered into the following stipulation of fact: The tokes for each shift were divided equally on the basis of a full share to a dealer for each shift. At trial, petitioner ostensibly contradicted this stipulation by testifying that she did not receive a full share of the toke income during 1981. Respondent argues that this stipulation of fact is a conclusive admission by petitioner and cannot be contradicted by petitioner with her testimony. The binding effect of a stipulation is set forth in Rule 91(e). Rule 91(e) provides as follows: Binding effect: A stipulation shall be treated, to the extent of its terms, as a conclusive admission by the parties to the stipulation, unless otherwise permitted by the Court or agreed upon by those parties. The Court will not permit a party to a stipulation to qualify, change, or contradict a stipulation in whole or in part, except that it may do so where justice requires. A stipulation and the admissions therein shall be binding and have effect only in the pending case and not for any other purpose, and cannot be used against any of the parties thereto *194 in any other case or proceeding. Petitioner argues that it was not her intent to stipulate herself out of the courthouse by stipulating that she actually received an equal share of the toke income from her co-dealers from each shift. Rather, petitioner argues that the stipulation was intended as a stipulation as to the fact that, generally, twenty-one dealers at each twenty-one table would equally divide the tips for each shift, not that she participated in this equal division. Based on petitioner's testimony and position throughout trial, we will construe the stipulation of fact at issue as merely a stipulation that generally twenty-one dealers as a whole equally divide their toke income at the end of each shift. We find this to be in accordance with petitioner's intent when she entered into this stipulation. Even if this stipulation explicitly referred to petitioner, we would have found it contrary to the credible testimony of petitioner at trial and would have qualified the stipulation accordingly. See Berry v. Commissioner,254 F.2d 471 (9th Cir. 1957); Jasionowski v. Commissioner,66 T.C. 312 (1976); Seatree v. Commissioner,25 B.T.A. 396 (1932), *195 affd. 72 F.2d 67 (D.C. Cir. 1934). As to whether the letter has any effect on respondent's procedures, the parties have not raised the issue. Rather, petitioner argues that the amount of toke income reported by her for 1981 on her income tax return is the total amount she earned in 1981. Section 6001 and the regulations thereunder require a taxpayer to keep records. Section 1.6001-1(e), Income Tax Regs., provides that the taxpayer shall retain these records "so long as the contents thereof may become material in the administration of any internal revenue law." Here, petitioner has disposed of her 1981 calendar on which she recorded her toke income for 1981. This evidence, along with the testimony of any of her co-dealers in 1981, could have corroborated her unsupported testimony in this case. Respondent offered no evidence to cast doubt that the amounts petitioner claims were reported on those calendars accurately reflected the amount of her toke income for 1981. Evidence consisting of corroborating testimony of third parties and records is more desirable than just the self-serving statements of a petitioner in a factual controvery where the petitioner has the *196 burden of proof. However, we accept petitioner's testimony that her lack of corroborating evidence was based on a written representation by respondent that her 1981 tax year would not be under examination. As a result of such reliance, she disposed of the only record of toke income she maintained for 1981. We found petitioner's testimony to be credible to the extent we believe she received an amount of toke income that was substantially less than that determined by respondent. On the other hand, respondent's cross-examination of petitioner leads us to believe that petitioner did receive toke income in excess of that which she reported. Doing the best we can with an unsatisfactory record, neither party having persuaded us to adopt their position in full, we will apply the principles enunciated in Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), and find that petitioner had unreported toke income of $ 3,000. The final issue is whether petitioner is subject to additions to tax pursuant to section 6653(a)(1) and section 6653(a)(2). Petitioner did not argue this issue on brief and has thus conceded this issue. See Money v. Commissioner,89 T.C. 46, 48 (1987); *197 Atlee v. Commissioner,67 T.C. 395, 396 n.2 (1976); Hedrick v. Commissioner,63 T.C. 395, 396-397 (1974). Accordingly, we sustain respondent's determination in this regard. Decision will be entered under Rule 155.
Footnotes
*. 50 percent of the interest due on $ 3,999.↩